532 S.E.2d 609

**In the Matter of Harry H. "Huck" NELSON, Former Greenville County Magistrate, Respondent.**

No. 25136.

Supreme Court of South Carolina.

Submitted May 23, 2000.

Decided June 5, 2000.

Attorney General Charles Molony Condon, Senior Assistant Attorney General James G. Bogle, Jr., and Henry B. Richardson, Jr., all of Columbia, for the Office of Disciplinary Counsel.

Harry H. Nelson, of Greenville, pro se.

PER CURIAM:

In this judicial grievance matter, respondent and Disciplinary Counsel have entered into an agreement under Rule 21, RJDE, Rule 502, SCACR. In the agreement, respondent, a former magistrate for Greenville County who resigned on August 31, 1999, admits misconduct and consents to a public reprimand. We accept the agreement and publicly reprimand respondent, the most severe sanction we are able to impose in these circumstances. The facts in the agreement are as follows.

### *Financial Matters*

In his capacity as a magistrate, respondent would set bond on defendants arrested by law enforcement authorities and collect bond when it was paid. Respondent was required to deposit the bond money into his magistrate bank account at Palmetto Bank, not more than five days after receipt of such funds. Respondent, however, engaged in a pattern of late submission of bond money.

When three checks representing bond payments, written by respondent to the Chief Administrative Magistrate, were returned, Disciplinary Counsel contacted respondent to discuss how he attended to the bonds that he collected. Respondent informed Disciplinary Counsel that he had just deposited $3,000 into the magistrate account. When asked to identify the source of that $3,000, respondent replied that it came from a bureau drawer in his home where he kept all of his money.

Respondent further explained that after performing night bond duty, he would place all cash on his person into that drawer. However, the cash in the drawer also represented money from his small business. Respondent further stated that he did not keep records as to which defendant had submitted what amount of money. He also commented that

his personal money and the court's money could have mixed together.

## Bank Account Matter

During respondent's tenure, he incurred ten insufficient funds fees on his official account, at $24 each, for a total of $240. On May 31, 1999, the account had a negative balance. However, respondent made several large deposits to the account in June 1999. The deposit slips respondent prepared did not identify a particular defendant with a particular bond, or state an identifying date. Although respondent had made those large deposits in June, a check sent by respondent to another magistrate was returned for insufficient funds on August 3, 1999.

Respondent had several deficiencies in his bookkeeping. Further, he wrote checks to other magistrates or clerks of court, but then failed to deliver or negotiate those checks until weeks later.

## Seminar Matter

Respondent and a municipal court judge conducted two seminars, known as "Summary Court Judges' Shoplifting Prevention Seminars." The fee to attend was $15 per person. Respondent filed an Annual Disclosure Statement of extra-judicial income, but did not disclose income received from the seminars. He is exempt from the portion of the form requiring disclosure of extra-judicial income because he was a part-time judge; however, he checked the block marked "No" as to extra-judicial compensation.

## Demeanor and Behavior Matters and Greenville County Detention Center Matter

Following complaints about respondent's use of tobacco products in areas of the Greenville County Detention Center where their use is forbidden, one day respondent demanded upon entry into the Center to be frisked prior to crossing the booking area of the Center. He demanded to have any contraband removed from his person and an inventory made of his personal property. He also demanded to be fingerprinted. Respondent did not give a reason for his demands and

refused to answer any questions as to why this was to be done. After officers did as he demanded, respondent proceeded to get a soft drink from the lobby. After he returned to his office, another officer had to take respondent's personal belongings back to him.

On another occasion, respondent entered the Center and acted in a loud, disorderly, and vulgar manner to the Center's staff. Although tobacco products were not allowed in the Center, respondent brought tobacco products into the Center and used them within the premises. He was directed by the staff to cease using the tobacco products on that occasion.

## Release of Defendants Matters

Another magistrate set cash bonds on two defendants on September 8, 1997, and on one defendant on September 24, 1997. Respondent released the defendants on personal recognizance bonds the same day the other magistrate had set cash bonds. He engaged in *ex parte* conversations concerning these bonds and did not give the State notice so that the State could be present and participate in those conversations.

Respondent also made unnecessary and derogatory comments to the defendants expressing his low opinion of the Travelers Rest police department, and thereby demonstrated his bias against the arresting authority.

In response to an inquiry by Disciplinary Counsel, respondent provided false information. Further, respondent directed one defendant not to tell the police or the other magistrate that he was allowing her to sign her own bond.

In another matter, a complainant wrote a letter concerning her estranged husband's arrest for harassment. Respondent allowed the estranged husband to be released on a personal recognizance bond. This was done without notice to the complainant, despite the husband's previous convictions for criminal domestic violence against her.

In another matter, a trooper arrested a defendant for a second offense of driving under the influence. Respondent directed the trooper to "unarrest" the defendant, and told the trooper in the presence of the defendant that respondent did not feel the defendant was impaired, disregarding the fact that

the defendant's blood alcohol level had registered above .15. He further directed the trooper to convey his opinion concerning the innocence of the defendant to the trial judge who would hear the case.

### Child Custody Matter

Respondent issued an order transferring the custody of a child. The order recited that it was in the "Family Court" and overrode a previous Family Court order concerning custody of the child. Respondent lacked authority to issue the relief granted to the extent that it dealt with a change in custody.

### Female Deputy Matter

A female deputy brought a prisoner before respondent for a bond hearing. Respondent made sexually oriented and inappropriate remarks to the deputy. The remarks included comments that she was attractive, that her appearance was sexually exciting, and that after seeing her, he would need to go home and take a cold shower. Respondent also remarked that other deputies "wanted her," indicating that other personnel had a sexual interest in her.

In response to Disciplinary Counsel's inquiry, respondent was not truthful when he indicated that no such remarks were made to or in the presence of the deputy.

### Bond Matter

A defendant was charged with not having a valid driver's license, operating a vehicle without insurance, and violating the alcohol open container laws, which are magistrate level offenses. In addition, the defendant was charged with the General Sessions offense of illegal possession of a pistol.

The defendant appeared before respondent, who set bond at $1,000 for the General Sessions charge, and at $625 for the three magistrate level charges. Cash in those amounts was delivered to respondent.

Respondent was required to deposit the funds he acquired from the defendant within five days of receipt, and then

transmit the monies from his magistrate's account at the Palmetto Bank to the other magistrate.

Pursuant to Disciplinary Counsel's investigation, respondent's magistrate account check payable to the other magistrate, dated February 17, 1999, long after the date of the defendant's court appearance, was discovered unnegotiated in respondent's briefcase. The other magistrate never received the bond money from respondent.

On February 17, 1999, respondent issued his magistrate's account check payable to the other magistrate in the amount of $1,000, representing the bond for the General Sessions offense. The Greenville County clerk of court, and the Detention Center have no knowledge as to the whereabouts of that bail money, which upon information and belief is still in the other magistrate's account.

## *Conclusion*

As a result of his conduct, respondent has violated the following provisions of the Rules for Judicial Disciplinary Enforcement, Rule 502, SCACR: Rule 7(a)(1) (violation of the Code of Judicial Conduct), Rule 7(a)(2) (failure to respond to a lawful demand from a disciplinary authority), and Rule 7(a)(4) (persistent failure to perform judicial duties or persistent performance of judicial duties in an incompetent or neglectful manner). Respondent has also violated the following provisions of the Code of Judicial Conduct, Rule 501, SCACR: Canon 1 (failure to uphold the integrity and independence of the judiciary), Canon 2(A) (failure to respect and comply with the law, and failure to conduct himself in a manner that promotes public confidence in the integrity of the judiciary), Canon 3(B)(1) (failure to hear and decide matters assigned to him except those in which disqualification is required), Canon 3(B)(2) (failure to be faithful to the law and maintain professional competence in it), Canon 3(B)(4) (failure to act patient, dignified, and courteous to those with whom he dealt in his official capacity), Canon 3(B)(5) (failure to perform his duties without bias or prejudice), Canon 3(B)(7) (failure to refrain from engaging in *ex parte* communications), Canon 3(B)(8) (failure to dispose of all judicial matters promptly, efficiently, and fairly), Canon 3(B)(9) (failure to refrain from making any

public comment that might reasonably be expected to affect a proceeding's outcome or impair its fairness), Canon 3(C)(1) (failure to diligently discharge his administrative responsibilities without bias and prejudice and maintain professional competence in judicial administration, and failure to cooperate with other judges and court officials in the performance of their official duties), Canon 4(A) (failure to conduct extra-judicial activities so that they would not raise doubt about his capacity to act impartially as a judge, demean the judicial office, or interfere with the proper performance of judicial duties), and Canon 4(B)(engaging in extra-judicial activities concerning the law, the legal system, the administration of justice, and non-legal subjects).

We accept the agreement for a public reprimand because respondent is no longer a magistrate and because he has agreed not to hereafter seek another judicial position in South Carolina unless first authorized to do so by this Court. As previously noted, this is the strongest punishment we can give respondent given the fact that he has already resigned his duties as a magistrate. Accordingly, respondent is hereby publicly reprimanded for his conduct.

PUBLIC REPRIMAND.